IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ETERNAL WORLD TELEVISION     )
NETWORK, INC., et al.,       )
                             )
    Plaintiffs,              )
                             )
v.                           )   Civil Action No. 13-0521-CG-C
                             )
SYLVIA MATTHEWS BURWELL,     )
Secretary of the United States )
Department of Health and Human )
Services, et al.,            )
                             )
    Defendants.              )

# ORDER

This matter is before the court on Defendants'[1] Motion to Dismiss, or in the Alternative, for Summary Judgment. (Doc. 34.) Also before the court is the Rule 56(d) Motion (Doc. 51) filed by Plaintiff Eternal World Television Network, Inc. ("EWTN"). For the reasons that follow, Defendants' motion to dismiss is due to be granted in part, Defendants' motion for summary judgment is due to be denied, and EWTN's 56(d) motion is due to be denied as moot.

## I. BACKGROUND

This lawsuit concerns federal regulations that require most health plans to cover contraceptive services that "include all Food and Drug

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Sylvia M. Burwell has been substituted in her official capacity for Kathleen Sebelius as Secretary of Health and Human Services.

Administration (FDA)-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity, as prescribed by a health care provider." 78 Fed. Reg. 39870-01, 39870. The court will refer to those services generally as "contraceptives" and to the contraceptive-coverage requirement as "the mandate."

EWTN, joined by the State of Alabama, filed this lawsuit to challenge the mandate on constitutional and statutory grounds. As an organization whose "mission is to serve the orthodox belief and teaching of the [Roman Catholic] Church" (Doc. 29-9 ¶ 4), EWTN opposes the use of contraceptives in any form. That belief has led EWTN to take "great pains through the years to ensure that its insurance plans do not cover, or in any way facilitate access to, sterilization, contraception, or abortion." (Doc. 29-9 ¶ 20.) As a result, EWTN does not believe that it can comply with the mandate without violating its religious beliefs.

But as the court noted in a previous order (Doc. 61), EWTN doesn't have to comply with the mandate. All it has to do is sign a form certifying its opposition to the use of contraceptives and then deliver that form to its third-party administrator. Given that accommodation, the court's earlier order held that four counts of the complaint failed as a matter of law. That order did not, however, express any opinion on the complaint's thirteen remaining claims. The matter comes before the court on Defendants' motion seeking either

dismissal of, or summary judgment on0, those thirteen claims.[2]

## II. LEGAL STANDARDS

A. **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). To satisfy this standard, a complaint must include "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of its claims. *Twombly,* 550 U.S. at 556.

B. **Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The basic issue before the court on a motion for summary judgment is

---

[2] EWTN's Rule 56(d) motion (Doc. 51) is also before the court. But for reasons discussed below, the court's ruling on Defendants' motion for summary judgment renders EWTN's Rule 56(d) motion moot.

3

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

On a motion for summary judgment, the movant bears the initial burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the movant's arguments, the court must view all evidence and resolve all doubts in the light most favorable to the nonmovant. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then [the court] should deny summary judgment." *Hinesville Bank v. Pony Exp. Courier Corp.*, 868 F.2d 1532, 1535 (11th Cir.1989).

### III. DISCUSSION

A.   **Defendants' Motion to Dismiss**

The court turns first to Defendants' motion to dismiss. According to EWTN, the court must not rule on this motion because Defendants "cite to and rely on a voluminous appendix, styled as an Administrative Record," which means EWTN "must be given an opportunity to conduct discovery" under Federal Rule of Civil Procedure 12(d). (Doc. 51 (quotations omitted).) That argument misstates the rule, however, and the materials Defendants offer in support of their motion for summary judgment pose no impediment to

4

the court's ruling on their motion to dismiss so long as "matters outside of the pleadings are . . . excluded by the court." (Doc. 51.) And as the following discussion will show, all of the complaint's remaining constitutional claims and some of its claims under the Administrative Procedure Act (the "APA") are due to be dismissed without reference to matters outside of the pleadings.

1.  *Plaintiffs' Constitutional Claims*

Plaintiffs' weakest constitutional claim is Count VI, which alleges that the mandate unlawfully interferes with matters of internal religious governance. Defendants cast that claim as a mere "restatement of EWTN's substantial burden theory" (Doc. 36 at 32), which theory the court rejected in its earlier order. (Doc. 61 at 10 ("[T]he court finds that the mandate does not impose a substantial burden on EWTN's religious practice . . . .").) EWTN did not respond to that argument, nor did it even mention Count VI in its opposition to Defendants' motion to dismiss. As a result, Count VI is due to be dismissed on the merits and as abandoned. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that when a party "fails to offer argument on an issue, that issue is abandoned" (citations omitted)).

The claims of intentional religious suppression and discrimination in Counts III, IV, VII, and VIII are also due to be dismissed. Unlike the claims the court addressed in its earlier order, these intentional-discrimination claims expressly allege that Defendants had illicit motives when they crafted

5

the mandate and its accommodation scheme. But in light of the court's earlier order, which held that the mandate neither suppresses religious exercise nor discriminates among religions, such allegations of illicit motives are irrelevant—all that matters is that the mandate, as it was enacted, does not violate the Constitution. *See United States v. O'Brien,* 391 U.S. 367, 383 (1968) ("[I]t is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive."); *Roman Catholic Archdiocese of Atlanta v. Sebelius*, No. 1:12–cv–03489–WSD, 2014 WL 1256373, at *26 (N.D. Ga. March 26, 2014) (noting that the neutrality inquiry involved in Free Exercise cases "does not turn on whether the drafters exhibited an invidious intent in enacting the law" (quotations omitted)). As a result, Counts III, IV, VII, and VIII are due to be dismissed.

Likewise, Plaintiffs' claim in Count X that the mandate violates its First Amendment right of free association is due to be dismissed. According to that claim, the mandate "impairs [EWTN's expressive association with its employees] by introducing a required term—coverage for sterilization, contraception, and abortifacients, both for employees and their dependents—into the relationship." (Doc. 50 at 19.) But that argument fails even if the court assumes that the relationship between EWTN and its employees counts as expressive association because the mandate does not prevent EWTN and its employees from gathering together to express their disapproval of the use

6

of contraceptives, nor does it interfere with EWTN's right to make decisions about whom it will associate with. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc. (FAIR)*, 547 U.S. 47, 69–70 (2006) (finding that a statute requiring law schools to allow military recruiters on campus did not violate the schools' rights of expressive association because "[s]tudents and faculty [were] free to associate to voice their disapproval of the military's message" and "nothing about the statute affect[ed] the composition of the group by making group membership less desirable."). As a result, Count X is due to be dismissed.

Finally, there is Count XI, which alleges that the mandate violates "EWTN's right not to be subjected to a system of unbridled discretion when engaging in speech or when engaging in religious exercise." (Doc. 1 ¶ 261.) But that allegation rests on Plaintiffs' claims that the mandate discriminates among religions, burdens the free exercise of religion, and violates EWTN's rights of free speech and free association. As discussed above and in the court's previous order, the mandate does none of those things. Thus, Count XI is due to be dismissed.

### 2. *Plaintiffs' APA Claims*

The complaint's first APA claim is Count XII, which accuses Defendants of failing to follow the notice-and-comment procedure set out in 5 U.S.C. § 553. Specifically, Plaintiffs claim that the 2011 Amended Interim Final Regulations, (the "2011 regulations") 76 FR 46621-01, which adopted

7

guidelines requiring health plans to cover all FDA-approved contraceptives, should have been subject to public comment before they were promulgated. Defendants don't deny that the 2011 regulations were promulgated without notice and comment. But according to Defendants, that does not matter because the 2011 regulations have been updated several times with amendments that *were* subject to appropriate notice and comment. That may be true. But those amendments don't cure any problems with the 2011 regulations because "post-promulgation comments . . . do not rectify the lack of pre-promulgation notice and comment." *U.S. v. Dean*, 604 F.3d 1275, 1281 (11th Cir. 2010). Otherwise, the APA's notice-and-comment requirements would be essentially meaningless and agencies "that wished to dispense with pre-promulgation notice and comment could simply do so, invite post-promulgation comment, and republish the regulation before a reviewing court could act." *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 215 (5th Cir. 1979). As a result, Defendants' only argument[3] against Plaintiffs' claim regarding improprieties with the 2011 regulations' notice-and-comment procedure is unpersuasive, so their motion to dismiss Count XII is due to be denied.

The complaint's next APA claim is Count XIII, which alleges that the

---

[3] Defendants have not tried to argue that the 2011 Interim Final Rules were exempt from the APA's notice-and-comment requirements under "the 'good cause' exceptions contained at 5 U.S.C. §§ 553(b)(3)(B) and (d)(3).'" *U.S. v. Dean*, 604 F.3d 1275, 1278 (11th Cir. 2010). As a result, the court expresses no opinion on that point.

8

regulations that created the accommodation for religious nonprofits are arbitrary and capricious because Defendants' explanation for excluding nonprofits like EWTN from the definition of the term *religious employer* "runs counter to the evidence that was before them." (Doc. 50 at 23 (quotations omitted).) Defendants do not offer any real argument on this point; instead, they just assert that the regulations "are neither arbitrary nor capricious" and that Plaintiffs' claims to the contrary are "flatly contradicted by the record." (Doc. 36 at 26.) Those conclusory statements fall well short of the burden that Defendants must meet to properly support a motion to dismiss, so their motion to dismiss Count XIII is due to be denied.

In Count XIV, Plaintiffs allege that Defendants exceeded their statutory authority when they enacted regulations "imposing duties and costs on insurance companies, and setting up a scheme of administrative fee reductions, which were not authorized by the [Affordable Care Act]." (Doc. 50 at 24.) Defendants' only argument for dismissal of this claim is that EWTN lacks standing to bring it. That may be the case. But it appears that the State of Alabama *does* have standing on Count XIV, and Defendants make no effort to argue otherwise. *See Wyoming ex rel. Crank v. U.S.*, 539 F.3d 1236, 1242 (10th Cir. 2008) (finding that "[f]ederal regulatory action that preempts state law creates a sufficient injury-in-fact" to support Article III standing). Thus, the court need not decide whether EWTN has standing on that count "because the presence of one party with standing is sufficient to satisfy

9

Article III's case-or-controversy requirement." *FAIR*, 547 U.S. at 53. As a result, Defendants' motion to dismiss Count XIV is due to be denied.

In Count XV, Plaintiffs claim that the mandate violates the Weldon Amendment, an appropriations rider that withholds funding from government agencies that "subject[ ] any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions." Consolidated Appropriations Act of 2012, Pub.L. No. 112–74, 125 Stat. 786, 1111. Plaintiffs say that some of the emergency contraceptives required to be covered under the mandate qualify as abortions within the meaning of the Weldon Amendment. But even if that is true (a question which the court expresses no opinion on at this time), Count XV still fails because the mandate does not discriminate against organizations like EWTN. Thanks to the accommodation that allows religious nonprofits to opt out of the mandate, EWTN is free to continue refusing to cover the allegedly abortion-inducing drugs without suffering any discrimination for making that choice. *See Roman Catholic Archbishop of Wash. v. Sebelius*, Civil Action No. 13–1441 (ABJ), 2013 WL 6729515, at * 46 (D.D.C. Dec. 20, 2013) ("With the elimination of the penalty for failing to provide coverage for contraceptive services, the accommodation eliminates any potential discrimination against plaintiffs for exercising their religious views and makes it irrelevant whether the word 'abortion,' as used in the Weldon Amendment, includes emergency contraceptives or not."). As a

result, Count XV is due to be dismissed.

Finally, there is Count XVI, which alleges that the mandate violates a provision of the Affordable Care Act that ensures that health plans will not be required to provide coverage for abortion services. 42 U.S.C. § 18023(b)(1)(A)(i). Defendants say EWTN lacks prudential standing to assert this claim. But again, they make no argument regarding the State's standing to do so, thus EWTN's supposed lack of standing cannot provide a sufficient basis for dismissal. *See FAIR*, 547 U.S. at 53. Defendants' only other argument against Count XVI is that none of the contraceptives required to be covered under the mandate qualify as "abortion services" under the Affordable Care Act. But EWTN says they do, and Defendants don't provide a convincing argument for holding otherwise at this juncture. As a result, EWTN's motion to dismiss is due to be denied with respect to Count XVI.

That leaves only Count XVII, captioned Declaratory Judgment, which is not so much a claim as a prayer for a specific form of relief. Defendants have not argued that such relief is inappropriate on the claims that survived the motion to dismiss, so to the extent Defendants move to dismiss that count, their motion is due to be denied.

**B.      Defendants' Motion for Summary Judgment**

As discussed above, only Counts XII, XIII, XIV, XVI, and XVII survived Defendants' motion to dismiss, which means they are the only counts on which the court need consider Defendants' motion for summary

judgment. But in arguing for summary judgment on those counts, Defendants do not cite any evidence at all, nor do they make any legal arguments that the court has not already rejected in the portion of this order dealing with Defendants' motion to dismiss. Because Defendants make no serious effort to show that there exists no "genuine dispute as to any material fact" or that they are "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), their motion for summary judgment is due to be denied on Counts XII, XIII, XIV, XVI, and XVII.

## IV. CONCLUSION

It is therefore **ORDERED** as follows:

(1) Defendants' Motion to Dismiss (Doc. 34) is DENIED with respect to Counts XII, XIII, XIV, XVI, and XVII, and is GRANTED with respect to all remaining claims;

(2) Defendants' Motion for Summary Judgment (Doc. 34) is DENIED with respect to Counts XII, XIII, XIV, XVI, and XVII;

(3) EWTN's 56(d) motion (Doc. 51) is DENIED AS MOOT.

**DONE** and **ORDERED** this 17th day of June, 2014.

/s/ Callie V. S. Granade
**UNITED STATES DISTRICT JUDGE**